IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

PARKER RYAN LITTLE,

        Defendant.

Case No. 21-CR-351-JFH

**OPINION AND ORDER**

    Before the Court is a motion to schedule sentencing ("Motion") filed by Defendant Parker Ryan Little ("Defendant"). Dkt. No. 45. For the reasons stated, Defendant's Motion is DENIED.

    On June 22, 2022, Defendant pled guilty to two counts of threatening interstate communications, in violation of 18 U.S.C. § 875(c), and two counts of stalking in violation of 18 US.C. 2261A(2)(B). *See* Dkt. No. 40. He has been detained in federal custody since November 10, 2021, when he was arrested on a warrant. Dkt. No. 10. Defendant's sentencing has not been scheduled. In the Motion, Defendant requests the Court schedule his sentencing "to occur expeditiously following the filing date of this motion." Dkt. No. 45 at 4.

    The Motion seems to criticize the Court for the current speed of its docket. Defendant cites national statistics from 2016 to 2021 on average sentencing timelines. Dkt. No. 45 at 1; Dkt. No. 45-1.[1] Defendant invokes Federal Rule of Criminal Procedure 32 and the Constitution's Due Process Clause to claim that delay is inordinate and prejudicial to him. Dkt. No. 45 at 1. Given

---

[1] The Court can't help but notice the absence of any other meaningful statistic relevant to the issue at hand—such as the average number of criminal cases tried per judge across the country, the average number of sentencings conducted per judge, or the average number of presentence reports prepared by a probation officer—since *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). *See infra* at 3.

the not-so-subtle undertones Defendant implies regarding the Court's purported "delay," it seems appropriate and necessary to educate Defendant and his counsel on the impropriety of the Motion.

In a federal criminal case, "[t]he court must impose sentence without unnecessary delay." Fed. R. Crim. P. 32(b)(1).  Appellate courts have recognized for more than fifty (50) years that a slow timeline is not problematic in and of itself:  "[i]t is well settled that passage of time alone will not bar imposition of sentence or require a defendant's discharge." *Welsh v. United States*, 348 F.2d 885, 886 (6th Cir. 1965).  Instead, "delay must partake of the purposeful and oppressive, or even smack of deliberate obstruction on the part of the Government, before relief will be granted." *United States v. Grabina*, 309 F.2d 783, 786 (2d Cir. 1962) (discussing *Pollard v. United States*, 352 U.S. 354, 361-62 (1957)).  The determinative factor is the *unnecessary* character of delay.

The Oxford English Dictionary defines "unnecessary" as "more than is needed; excessive; superfluous."  Unnecessary, Oxford English Dictionary (last visited Sept. 22, 2022), https://www.oed.com/view/Entry/215737?redirectedFrom=unnecessary#eid.  The Macmillan Dictionary defines "unnecessary" as "something that should not have happened because it could have been avoided."  Unnecessary, Macmillan Dictionary (last visited Sept. 22, 2022), https://www.macmillandictionary.com/us/dictionary/american/unnecessary.  Black's Law Dictionary defines "unnecessary" as "not required under the circumstances."  Unnecessary, *Black's Law Dictionary* (11th ed. 2019).  A recounting of the Court's current circumstances is thus appropriate.

The Court has experienced unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020), which held that while Congress had diminished the Creek reservation in Eastern Oklahoma, it had never formally disestablished it.  This imposed federal "jurisdiction over the apprehension and prosecution of

major crimes by or against Indians in a vastly expanded Indian Country." *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 692 (Okla. Crim. App. 2021). *McGirt*'s holding was later extended to other reservations as well.

As Chief Justice Roberts recognized in his *McGirt* dissent, "the share of serious crimes committed by 10%–15% of the 1.8 million people in eastern Oklahoma, or of the 400,000 people in Tulsa, is no small number." 140 S.Ct. at 2501. The practical effect of *McGirt* was a one-year increase of nearly 200% in the number of criminal cases filed in the Northern District of Oklahoma and more than 400% in the Eastern District of Oklahoma. *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects. Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt*. *Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022). And numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, --- F. Supp. 3d ---, 2022 WL 1948762, at *7 (E.D. Okla. Apr. 29, 2022) (collecting cases).

The dramatic increase in criminal caseloads because of *McGirt* has resulted in strained judicial resources across numerous areas, two of which are particularly relevant here. First, the Eastern District of Oklahoma is allocated one and a half full-time district judges, of which the undersigned is the half-time judge due to his multi-district caseload—a caseload which includes the Northern District of Oklahoma. The Northern District of Oklahoma, which is allocated three and a half full-time district judges, is currently operating with only one and a half active district judges.

Additionally, the United States Probation Office has had an avalanche of presentence investigations to conduct. Each defendant is a unique human being with many factors to be researched for the Court's consideration before sentencing, including: personal and family history; physical condition; mental and emotional health; potential substance abuse history; educational, vocational, and special skills; employment history; and financial condition as well as specific offense conduct, sentencing guideline calculations and sentencing options. The presentence investigation and resulting report address *all* these facets of a defendant's life. Considering the detail required for a presentence investigation report, the gravity of a sentencing decision, and the effect of imposition of a sentence on a defendant's life, liberty, and freedom, the presentence investigation process is not one that should be carelessly rushed.[2]

Defendant's Motion glaringly omits *any* mention of *McGirt* despite the case's seismic consequences on the Northern and Eastern Districts of Oklahoma. This conspicuous silence is bold considering that the Office of the Federal Public Defender, which drafted the Motion, has been in the midst of the *McGirt* fallout for over two years now. That office too has no doubt been taxed in responding to the tidal wave of criminal cases prosecuted in federal court because of *McGirt*. Applying the standard of "unnecessary delay" under Rule 32, Defendant does not provide any ground whatsoever to suggest that the timeline in this case has been purposely slow or oppressive, excessive, superfluous, or avoidable under the circumstances the Court and counsel currently face. Defendant's suggestion that any delay is "undue" or "exorbitant" [Dkt. No. 45 at 2] is, to put it charitably, tone-deaf.

---

[2] The Court would like Defendant to understand that it views his case as important, including the endeavor to set his sentencing as soon as possible. Indeed, there are other defendants waiting for sentencing, many of whom have been waiting far longer than the Defendant here. This is not a situation the Court is satisfied with, but it is truly making every effort to diligently address every case and give every defendant the attention deserved.

4

The Court need not conduct a due process analysis because Defendant acknowledges the Supreme Court has not recognized a due process right to speedy sentencing. Dkt. No. 28 at 2 (citing *Betterman v. Montana*, 578 U.S. 437, 447-48 (2016)). The Court does note, however, that even if analyzed under the *Barker v. Wingo* factors that Defendant encourages, the result would be the same. The *Barker* factors consider: "(1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay prejudiced the defendant." *Jackson v. Ray*, 390 F.3d 1254, 1260 (10th Cir. 2004) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The delay must be "presumptively prejudicial" before the Court may consider the remaining *Barker* factors. *Id.* at 1261. Defendant requests the Court hold that "any delay beyond six months following conviction creates a presumption of inordinate delay." Dkt. No. 28 at 3. For the reasons described above, the Court rejects Defendant's proposition. The current situation in Oklahoma is not satisfactory to anyone, least of all the Court. But it is not inordinate—it is simply the situation as it exists currently for all defendants, all counsel, and all court staff in these two districts.

IT IS THEREFORE ORDERED that the motion to schedule sentencing [Dkt. No. 45] filed by Defendant is DENIED.

DATED this 19th day of October 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE